UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: RFC AND RESCAP
LIQUIDATING TRUST LITIGATION

Civil No. 13-3451 (SRN/HB)

_____

**This Document Relates to:**

**Civil No. 13-3506 (SRN/HB)**

RESIDENTIAL FUNDING COMPANY, LLC,

        Plaintiff,

v.

IMPAC FUNDING CORPORATION,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**

Donald G. Heeman and Jessica J. Nelson, **FELHABER LARSON**, 220 South Sixth Street, Suite 2200, Minneapolis, MN  55402; Peter E. Calamari, Isaac Nesser, David Elsberg, and Anthony P. Alden, **QUINN EMANUEL URQUHART & SULLIVAN, LLP**, 51 Madison Avenue, 22nd Floor, New York, NY  10010; and Johanna Ong, **QUINN EMANUEL URQUHART & SULLIVAN, LLP**, 865 South Figueroa Street, 10th Floor, Los Angeles, CA  90017; and Jeffrey A. Lipps and Jennifer A.L. Battle, **CARPENTER LIPPS & LELAND LLP**, 280 North High Street, Suite 1300, Columbus, OH  43215, for plaintiff.

Erin Sindberg Porter and Mark L. Johnson, **GREENE ESPEL PLLP**, 222 South Ninth Street, Suite 2200, Minneapolis, MN  55402; and Todd A. Noteboom, W. Anders Folk, Timothy P. Griffin, Sharon R. Markowitz, and William D. Thomson, **STINSON LEONARD STREET LLP**, 150 South Fifth Street, Suite 2300, Minneapolis, MN  55402, for defendant.

The individual matter before this court, *Residential Funding Co. v. Impac Funding Corp.*, filed in December 2013, is one of many lawsuits that Plaintiff Residential Funding Company, LLC ("RFC") filed against mortgage loan originators, including Defendant Impac Funding Corporation ("Impac").  In January 2015, the related cases were consolidated for pretrial purposes before U.S. District Judge Susan Richard Nelson. From the beginning, counsel from the law firm Greene Espel PLLP have represented

Impac. On October 10, 2016, Impac added to its defense team attorneys from Stinson Leonard Street LLP ("Stinson"), a law firm where Judge Nelson's spouse is a partner. On October 13, 2016, RFC requested that Judge Nelson refrain from recusing herself, or alternatively, that she prohibit Stinson's appearance if it would trigger mandatory recusal. Judge Nelson directed the parties to resolve these issues through a formal motion before this Court, and on October 31, 2016, RFC filed a motion opposing Judge Nelson's recusal, or alternatively, prohibiting Stinson's appearance in the case. Judge Nelson referred the motion to this Court.

The Court will grant RFC's motion. The Court rejects RFC's contention that 28 U.S.C. § 455(b) does not automatically require recusal in this case, given that Judge Nelson has already decided on three occasions that her spouse has an "interest that could be substantially affected by the outcome of the proceeding" by virtue of his partnership at Stinson. However, the Court agrees with RFC that allowing Stinson to appear as counsel at this advanced stage of the litigation is inappropriate, since Stinson's appearance would trigger Judge Nelson's mandatory recusal. The Court will prohibit Stinson from representing Impac in this case.

## BACKGROUND

### I. FILING AND CONSOLIDATION

RFC initiated this lawsuit against Impac in December 2013 nearly three years ago. (Compl., Dec. 14, 2013, Civil No. 13-3506,[1] Docket No. 1.) Counsel from Greene Espel

---

[1] All Docket references are to the consolidated action, Civil No. 13-3451, unless otherwise noted.

have represented Impac since its first appearance in the litigation. (*See* Stipulation for Extension of Time to Respond to Compl., Jan. 3, 2014, Civil No. 13-3506, Docket No. 5.) The case was originally assigned to U.S. District Judge Joan N. Ericksen and U.S. Magistrate Judge Steven E. Rau.

*RFC v. Impac* is one of a number of lawsuits RFC has filed against mortgage loan originators in the District of Minnesota, Hennepin County District Court, and the Southern District of New York, alleging damages arising from the sale of mortgage-backed securities. While Impac never sold securities directly to RFC, RFC alleges that because Impac acquired certain assets and liabilities of a company (Pinnacle Financial Corporation) that did make such sales to RFC, Impac is Pinnacle's successor-in-interest and must indemnify RFC for the damages incurred. (Am. Compl. at 1, Apr. 3, 2014, Civil No. 13-3506, Docket No. 34.)

Upon agreement of the judges in this District, *RFC v. Impac* and dozens of the related cases filed by RFC and one other plaintiff were consolidated before Judge Nelson and U.S. Magistrate Judges Jeffrey J. Keyes and Hildy Bowbeer[2] on January 27, 2015.[3] (Administrative Order, Jan. 27, 2015, Docket No. 100; *see also* Am. Administrative Order, Jan. 29, 2015, Docket No. 102.) The consolidation covers "all pretrial purposes, including the coordination of all discovery matters, settlement discussions, non-dispositive motions and dispositive motions, other than summary judgment and trial."

---

[2] Magistrate Judge Bowbeer now handles all magistrate judge matters in the consolidated action.

[3] The consolidated cases before Judge Nelson are together referred to as the "consolidated action."

(Am. Administrative Order at 2-3.) The individual actions are stayed indefinitely, until Judge Nelson deems appropriate, and "will be transferred back to their original District Judge and Magistrate Judge for summary judgment, if appropriate, and trial." (*Id.* at 3.)

## II. PAST INSTANCES OF RECUSAL IN THE CONSOLIDATED ACTION

Since consolidation, Judge Nelson has recused in three instances in the consolidated action as a result of a defendant's mid-litigation retention of Stinson, where, as noted, her spouse is a partner.[4] First, on March 19, 2015, Defendant Circle Mortgage Corp. withdrew its previous counsel and substituted attorneys from Stinson. (Def. Circle Mortgage Corp.'s Notice of Withdrawal & Substitution of Counsel, Mar. 19, 2015, Docket No. 281.) In response, Plaintiff's counsel submitted a short letter to Judge Nelson arguing that recusal in *RFC v. Circle Mortgage Corp.* was unnecessary. (Pls.' Letter to District Judge, Mar. 20, 2015, Docket No. 283.) Judge Nelson rejected Plaintiff's request and issued an order of recusal. In her order, Judge Nelson explained that it is her normal practice to automatically recuse when an attorney from Stinson appears before her. (Order of Recusal and Reassignment as to Case 13cv3545 (PAM/JJK), at 1, Mar. 24, 2015, Docket No. 297.) Judge Nelson further asserted that recusal is required under 28 U.S.C. § 455(b) because she knows that her spouse has an "interest that could be

---

[4] Stinson has thirteen offices in the United States, nearly five hundred attorneys, and nearly three hundred partners. (Pl.'s Mem. in Supp. of Mot. Opposing Recusal at 5, Oct. 31, 2016, Docket No. 1891.) There is no allegation that Judge Nelson's spouse is personally involved in representing any party in either the consolidated action or the separately managed actions.

substantially affected by the outcome of the proceeding." (*Id.* at 1-2 (citing § 455(b)(4), (5) and *In re Kan. Pub. Emps. Ret. Sys.*, 85 F.3d 1353, 1359 (8th Cir. 1996)).)

Judge Nelson has since recused pursuant to § 455 in two other individual cases in the consolidated action based on the defendant's mid-litigation retention of Stinson: *RFC v. Universal American Mortgage Co.*, Civil No. 13-3519, on July 21, 2015; and *RFC v. BMO Harris Bank, N.A.*, Civil No. 13-3523, on July 5, 2016. (Order of Recusal & Reassignment as to Case 13-cv-3519 (SRN/JSM), July 21, 2015, Docket No. 655; Order of Recusal & Reassignment as to Case 13-cv-3523, July 5, 2016, Docket No. 1662.) The individual actions that are no longer before Judge Nelson – the "separately managed actions" – are now before U.S. District Judge Paul A. Magnuson and Magistrate Judge Bowbeer.

> According to Impac,
>
> Stinson has played a leadership role in the joint defense group. . . . Since the consolidation order was entered in January 2015, Stinson has tracked the consolidated status conferences, attending each monthly conference before Judge Nelson and Magistrate Judge Bowbeer, participating in and often leading the meet-and-confer calls setting the conference agenda, and working hand-in-glove with counsel in the consolidated proceedings. . . .
>
> . . . .
>
> [Additionally, w]ith permission from the Court, Stinson attends and observes all [status] conferences to ensure that the issues, positions, and overall management of the consolidated actions are carefully coordinated with actions Stinson is handling for other defendants. Once adjourned, the parties in Stinson's cases then move to Judge Bowbeer's courtroom to cover a nearly identical agenda. These conferences are often short, with the parties frequently noting that they have nothing to add beyond what was discussed in Judge Nelson's courtroom.

(Def.'s Resp. to RFC's Mot. Opposing Recusal ("Def.'s Recusal Mem."), at 7-8 & n.2, Nov. 7, 2016, Docket No. 1924.) Despite the need to essentially repeat the same status

conferences twice in a row, Impac asserts that "it is hard to imagine a more efficient, coordinated approach to the actions that are assigned to Judge Magnuson and Magistrate Judge Bowbeer." (*Id.* at 8 n.2.)

**III. PROCEDURAL HISTORY IN** *RFC v. Impac*

In recent months, Judge Nelson has made a number of decisions impacting Impac. First, Judge Nelson permitted Impac to move for summary judgment on the limited question of whether Impac bears successor liability for the actions of its predecessor (Pretrial Order No. 4, Mar. 11, 2015, Docket No. 214), and, in April 2016, Judge Nelson denied the motion. (Mem. Op. & Order, Apr. 27, 2016, Docket No. 1523.) Second, in June, Judge Nelson denied Impac's motion for interlocutory appeal of the denial of summary judgment. (Mem. Op. & Order, June 20, 2016, Docket No. 1614.) Third, according to RFC, at a July status conference, Judge Nelson "rejected Impac's effort to limit its Rule 30(b)(6) testimony to matters within the knowledge of Impac's current employees and required it to consult former employees to educate its designee." (Pl.'s Mem. in Supp. of Mot. Opposing Recusal ("Pl.'s Recusal Mem.") at 5, Oct. 31, 2016, Docket No. 1891 (citing Status Conference Tr. at 30-40, July 29, 2016, Docket No. 1699).)

Additionally, on September 26, 2016, according to Impac, the parties "participated in a long-scheduled mediation [which] ended in impasse." (Def.'s Recusal Mem. at 5.)

On October 10, 2016, five attorneys from Stinson noticed their appearance as counsel of record for Impac. (Notice of Appearance, Oct. 10, 2016, Docket No. 1823.) Impac asserts that it has not engaged in "judge shopping" and there are a number of

- 6 -

reasons why it has retained Stinson.  (Def.'s. Recusal Mem. at 1.)  First, Impac, through counsel at Greene Espel, points out that one Greene Espel attorney working on the case is leaving the firm.  (Decl. of Isaac Nesser, Ex. A, Oct. 31, 2016, Docket No. 1892.) Second, Impac asserts that Greene Espel has always been focused on the issue of successor liability, and when Judge Nelson denied summary judgment on that issue and the parties failed to work out a settlement, "Impac was faced with [the] stark realit[y] [that] this case is not going away – by dispositive motion or otherwise – any time soon, and Impac must commit the full resources necessary to mount a comprehensive defense [based on merits issues beyond successor liability]."  (Def.'s Recusal Mem. at 6.)  Impac appears to argue that Greene Espel alone is unable to "broadly engage with the complex [merits] issues" in the case, including "Pinnacle['s] origination and sale of loans to RFC; RFC's due diligence, purchase, and securitization of such loans; the servicing of such loans by various third parties; and the myriad causation, allocation, and complex bankruptcy issues."  (*Id.*)

Because of this need for additional counsel, Impac and Greene Espel interviewed local firms about joining the defense team in order to "complete fact and expert discovery as efficiently as possible and to prepare for trial," (*Id.* at 6-7), and they ultimately decided on Stinson because of the firm's experience in the RFC litigation and similar issues, its high-quality attorneys, its "competitive rates," its location, its working relationship with Greene Espel, and "its overall ability to jump in and seamlessly move fact and expert discovery forward," (*id.* at 11).  Impac asserts that while Greene Espel is still working on the case, it intends to transition to Stinson as lead counsel as the case moves into the

merits stage, while Greene Espel will continue to lead on the issue of successor liability. (*Id.* at 13.)

On October 13, 2016, RFC wrote a letter to Judge Nelson requesting that she refrain from recusing, or alternatively, that she prohibit Stinson from representing Impac (employing essentially the same arguments RFC makes before this Court). (Pl.'s Letter to District Judge, Oct. 13, 2016, Docket No. 1832.) On October 17, Judge Nelson issued an order directing that "[t]his dispute will be handled by way of formal motion before [this Court]." (Order, Oct. 17, 2016, Docket No. 1845.)

RFC filed the instant motion on October 31, 2016, requesting that the Court order that Judge Nelson should not recuse, and alternatively, if § 455 would require recusal, that Stinson be disqualified from representing Impac. (Pl.'s Mot. Opposing Recusal or Alternatively Prohibiting Def.'s Retention of Stinson, Oct. 31, 2016, Docket No. 1889.)

## ANALYSIS

**I.     MOTION OPPOSING JUDGE NELSON'S RECUSAL**

28 U.S.C. § 455 defines the situations in which a federal judge should recuse himself or herself:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself [or herself] in any proceeding in which his [or her] impartiality might reasonably be questioned.
> (b) He [or she] shall also disqualify himself [or herself] in the following circumstances:
>
> . . . .
>
> (4) He [or she] knows that . . . his [or her] spouse or minor child residing in his [or her] household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any

>   other interest that could be substantially affected by the outcome of the proceeding;
>
>   (5) He [or she] or his [or her] spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
>
>   . . . .
>
>   (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
>
>   . . . .
>
>   (e) No justice, judge, or magistrate judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

28 U.S.C. § 455.

Recusal under § 455 is within the "sound discretion" of the district court. *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, 601 F. Supp. 2d 1120, 1124 (D. Minn. 2009) (quoting *Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir. 2002) (en banc)). However, not all elements of the decision are equally discretionary. If the Court determines that one of the scenarios in § 455(b) is present, then recusal is mandatory and the conflict cannot be waived. *See In re BellSouth Corp.*, 334 F.3d 941, 969 (11th Cir. 2003) (explaining that by enacting § 455(b), Congress "established a per se rule requiring automatic disqualification in any case in which any of the enumerated circumstances is present"). In contrast, if only § 455(a) is at issue, parties may waive any appearance of impartiality. § 455(e); *see In re Kan. Pub. Emps.*, 85 F.3d at 1359.

Recusal may be accomplished by formal motion from a party;[5] as a general matter, "[b]ecause a judge is presumed to be impartial, 'the party seeking disqualification bears the substantial burden of proving otherwise.'" *United States v. Dehghani*, 550 F.3d 716, 721 (8th Cir. 2008) (citation omitted). However, in some cases where § 455 is implicated, *sua sponte* recusal may be appropriate or even required. *See, e.g.*, *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 663-66 (8th Cir. 2003) (recognizing that there can be situations in which *sua sponte* recusal under § 455 is required).

In this case, the parties have explicitly waived any § 455(a) conflict.[6] The issue before the Court is whether recusal is mandatory pursuant to § 455(b)(4) and (5) because Judge Nelson knows that her spouse has an interest that "could be substantially affected by the outcome of the proceeding."

RFC urges the Court to hold, as the Second Circuit has, that when a judge's spouse is a partner in a large law firm, the spouse does not categorically have an interest that could be substantially affected by the outcome of all proceedings that the spouse's law firm is involved in. *See Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77, 83-85 (2d Cir. 1996); *but see In re BellSouth Corp.*, 334 F.3d at 943-44 (holding that whenever a judge's relative is a partner in a firm appearing before the court, the relative necessarily has an interest that could be substantially affected by the outcome of the proceeding);

---

[5] *See, e.g.*, *United States v. Tucker*, 82 F.3d 1423, 1424-27 (8th Cir. 1996) (discussing the procedural requirements for recusal motions).

[6] Impac explicitly declines to take a position on whether recusal is necessary under the statute (Def.'s Recusal Mem. at 9), and RFC opposes recusal. The Court construes these positions as waiver of any § 455(a) conflict.

*Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1113 (5th Cir. 1980) (same); *SCA Servs., Inc. v. Morgan*, 557 F.2d 110, 115-16 (7th Cir. 1977) (same).

The Court need not decide whether recusal is required in all cases when a judge's spouse is a partner in a law firm appearing before the Court, regardless of the law firm's size. RFC has provided no legal or factual basis to dispute the conclusion that Judge Nelson's spouse has an "interest that could be substantially affected by the outcome of the proceeding." Judge Nelson has recused herself previously in other cases in which Stinson has entered an appearance. The statute requires a judge to consider his or her personal knowledge of the spouse's interest; by citing to § 455(b)(4) and (5) in her earlier recusal orders, Judge Nelson signaled that she indeed has personal knowledge that her spouse has an interest triggering mandatory recusal. Therefore, if Stinson were permitted to represent Impac in *RFC v. Impac*, the Court agrees that Judge Nelson would be required to recuse pursuant to § 455(b)(4) and (5).

## II. MOTION TO DISQUALIFY STINSON

Based on Judge Nelson's knowledge that her spouse has an interest in matters in which Stinson is acting as counsel, Judge Nelson's regular practice of *sua sponte* recusal when Stinson represents a party before her from the beginning of litigation is proper. However, when the mid-litigation appearance of a law firm will necessarily trigger mandatory recusal under § 455(b), this Court is hesitant to endorse a practice of automatic recusal. The proper question becomes whether the firm should be permitted to enter into the lawsuit at that time.

The decision to disqualify counsel is within the trial court's discretion, but the Eighth Circuit reviews such decisions carefully because "the potential for abuse by opposing counsel is high." *Droste v. Julien*, 477 F.3d 1030, 1035 (8th Cir. 2007). Disqualifying a party's counsel of choice is an "extreme measure" that "should be imposed only when absolutely necessary." *Macheca Transp. Co. v. Phila. Indemn. Ins. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (citations omitted). The party seeking disqualification bears the burden of showing that this outcome is warranted, *see A.J. by L.B. v. Kierst*, 56 F.3d 849, 859 (8th Cir. 1995), but if there are genuinely "legitimate doubts," they "must be resolved in favor of disqualification," *Olson v. Snap Prods., Inc.*, 183 F.R.D. 539, 542 (D. Minn. 1998).

Factors to consider when determining whether to disqualify counsel include the balance of interests between the attorneys, clients and the public as well as the court's "duty to maintain public confidence in the legal profession and its duty to insure the integrity of the judicial proceedings." *Gifford v. Target Corp.*, 723 F. Supp. 2d 1110, 1116-17 (D. Minn. 2010) (quoting *In re Potash Antitrust Litig.*, No. 3-93-197, 1993 WL 543013, at *16 (D. Minn. Dec. 8, 1993)). While the right to select counsel of one's choosing is an "important public right," *Macheca*, 463 F.3d at 833, "the right to select counsel is not absolute, and it may be overridden when 'compelling reasons exist,'" *Glover v. Standard Fed. Bank*, No. 97-2068, 2001 WL 228440, at *2 (D. Minn. Mar. 6, 2001) (quoting *McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1263 (5th Cir. 1983)).

When a party's mid-litigation substitution of counsel would trigger a judge's recusal, the Court weighs the party's interest in its counsel of choice against the strong public interest against judge-shopping or possibly choosing counsel only to disqualify a

particular judge. When Congress enacted the mandatory recusal provisions in 28 U.S.C. § 455, it did not intend to discard the cornerstone principle that "[l]itigants . . . are not entitled to judges of their own choice." S. Rep. No. 93-419, at 5. Furthermore, "in determining whether to allow substitute or additional counsel or to disqualify a firm or attorney from participation in particular litigation, the Court may consider not only the potential for manipulation and impropriety, but also the Court's docket, the judicial time invested, and other factors relevant to the efficient administration of justice." *Glover*, 2001 WL 228440, at *2.

RFC argues that Stinson should not be permitted to appear in this case for a number of reasons, including the time and resources Judge Nelson has already invested in this case and the larger group of cases for the District Court, and the implication that Impac's retention of Stinson is an act of judge-shopping. RFC argues that Impac has failed to demonstrate any overriding need for counsel from Stinson, as opposed to some other law firm, that would justify Stinson's retention when such representation will require Judge Nelson to recuse herself.

In response, Impac argues: (1) RFC has failed to prove that Impac is engaging in judge-shopping or has an improper motive, without which disqualification of counsel should not be permitted; (2) no inefficiency or prejudice will result from Judge Nelson's recusal; (3) Impac has a fundamental right to counsel that includes representation by counsel of its choosing; and (4) Impac hired Stinson based on innocent reasons tied to Impac's need for additional representation resulting from the recent course of the litigation. The Court addresses each of Impac's arguments below.

First, contrary to Impac's assertions, RFC need not prove that Impac intended to engage in judge-shopping in order for this Court to disqualify Stinson. *See, e.g.*, *Glover*, 2001 WL 228440, at *2 (disqualifying counsel to avoid Judge Nelson's recusal in a similar situation and holding that inquiry into whether the party retaining Stinson's predecessor had an improper motive was "simply not necessary"); *see also In re FCC*, 208 F.3d 137, 139 (2d Cir. 2000) (disqualifying counsel whose appearance would have forced recusal of a judge known to be on the appellate panel and declining to make a finding as to "good faith or intent"). While it would be reasonable for this Court to conclude that Impac, Greene Espel, and Stinson had no improper motive in mind, it would be equally reasonable for the Court to conclude the opposite,[7] and the Court does not find particularly persuasive Impac's argument that because it has posited innocent, plausible reasons for retaining Stinson, the Court must accept those reasons as true. Other courts have recognized "the practical impossibility of proving a party's true motive for hiring a particular attorney." *In re BellSouth*, 334 F.3d at 947. Furthermore, "[i]t is clear . . . that tactical abuse becomes possible if a lawyer's appearance can influence the recusal of a judge." *In re FCC*, 208 F.3d at 139. This Court has a strong interest in discouraging judge-shopping,[8] which weighs heavily in favor of disqualifying Stinson,

---

[7] *See, e.g.*, *Glover*, 2001 WL 228440, at *3 (explaining in dicta that if the party attempting to retain Stinson's predecessor in a case before Judge Nelson "had a long-standing presence in the litigation, its recent attempt to add [the firm] as counsel would certainly smack of manipulation and impropriety").

[8] *See, e.g.*, *Belue v. Leventhal*, 640 F.3d 567, 574 (4th Cir. 2011) (explaining that courts should discourage "strategic moves by a disgruntled party to remove a judge whose rulings the party dislikes" (quoting *In re United States*, 441 F.3d 44, 67 (1st Cir. 2006))); *United States v. Beale*, 574 F.3d 512, 519 (8th Cir. 2009) (explaining, in reference to motions for recusal, that

(Footnote continued on next page.)

regardless of whether forcing Judge Nelson's recusal was among Impac's, Greene Espel's, and Stinson's motivations.

Second, the Court remains strongly concerned about questions of efficiency and delay. The Court notes, first, that by consolidating all related cases, the judges in this District made the explicit decision that consolidating these actions before Judge Nelson is in the interest of the District and is the District's preference as to how to exercise its "inherent power . . . to manage and control its docket." *In re FCC*, 208 F.3d at 139 (quoting *Johnson v. Morgenthau*, 160 F.3d 897, 899 (2d Cir. 1998)). The cases are over three years old. The efficiency of the consolidated action is undermined when Judge Nelson must recuse herself. Indeed, the separately managed actions require conferences that duplicate Judge Nelson's conferences, and adding another separately managed action will only increase this inefficiency.

The efficiency and fairness of the individual matter, *RFC v. Impac*, would also be undermined if Judge Nelson were required to recuse herself, given that Judge Nelson has overseen numerous pre-trial disputes including a limited summary judgment motion, and Judge Nelson has been involved in the case for almost two years. *See Glover*, 2001 WL 228440, at *3 (disqualifying a firm that would trigger recusal when Judge Nelson had

---

(Footnote continued.)

"defendants are not 'permitted to use such a plot or threat as a judge-shopping device'" (quoting *In re Basciano*, 542 F.3d 950, 957 (2d Cir. 2008))); *Sw. Bell Tel. Co. v. FCC*, 153 F.3d 520, 523 (8th Cir. 1998) (noting that one concern courts should consider when deciding questions of recusal is the desire to avoid facilitating judge-shopping (quoting *In re Nat'l Union Fire Ins. Co.*, 839 F.2d 1226, 1229 (7th Cir. 1988))); *Rubashkin v. United States*, Nos. 13-CV-1028-LRR & 08-CR-1324-LRR, 2016 WL 237119, at *14 (N.D. Iowa Jan. 20, 2016) (explaining the courts' strong interest in preventing judge-shopping); *In re Medtronic*, 601 F. Supp. 2d at 1124 (similar).

already been "intimately involved in the ongoing discovery disputes, which involve[d] issues of tremendous complexity and contentiousness," despite her "relatively brief" involvement in the case); *see also Robinson v. Boeing Co.*, 79 F.3d 1053, 1054-56 (11th Cir. 1996) (affirming district court's disqualification of firm retained fifteen months into litigation when the firm's appearance would have triggered mandatory recusal).

Additionally, "[c]ourts have long accepted that resulting delay may justify the exercise of a trial judge's discretion to deny substitute counsel in the midst of litigation." *Robinson*, 79 F.3d at 1055. Both the courts and litigants, including RFC, have an interest in avoiding unnecessary delay. While Impac argues that there will be no delay because there are no formal motions pending before Judge Nelson in the individual action, there are discovery disputes that have not yet become the subject of a formal motion and that will likely relate back to earlier decisions Judge Nelson has made in the case. It is difficult to understand how Judge Nelson's recusal would do anything but delay progress on those issues. Judicial resources expended up to this stage and the delay and inefficiency that will likely result if Stinson appears in the individual action weigh heavily in favor of Stinson's disqualification.

Third, Impac argues that "the choice of counsel belongs to Impac alone," (Def.'s Recusal Mem. at 11), and that Impac will be unfairly prejudiced, in a manner that might even implicate Impac's due process rights, if Stinson is disqualified. The Court rejects these arguments; while the fundamental right to counsel does flow from the Due Process Clause, the right to representation by a specific attorney or firm of one's choosing is "not absolute," *Glover*, 2001 WL 228440, at *2, and "cannot be exercised without thought also to the needs of effective administration of justice," *McCuin*, 714 F.2d at 1263.

Furthermore, the Eighth Circuit has held that "[i]n the civil context, the constitutional right to counsel **of one's own choice** is not implicated." *Droste*, 477 F.3d at 1036 (emphasis added). When substituting counsel mid-litigation, parties and attorneys have a duty to be cognizant of conflicts that retention of a new attorney might cause; the Court "assume[s] that lawyers know who their partners are and have been." *In re FCC*, 208 F.3d at 140.

In *In re FCC*, the Second Circuit addressed an analogous issue in the appellate context. The Court finds the Second Circuit's reasoning applicable to the instant case. As a general rule,[9]

> [a]s between a judge already assigned to a [case], and a lawyer who thereafter appears in circumstances where the appearance might cause an assigned judge to be recused, the lawyer will go and the judge will stay. This practice preserves the neutral and random assignment of judges to cases, and it implements "the inherent power of this Court to manage and control its docket." So the failure of counsel to consider in advance the known or knowable risk of a judge's recusal may result in the rejection of the appearance by that lawyer or firm.

*Id.* at 139-40 (citation omitted). In the instant matter, Impac, Greene Espel and Stinson all knew that upon Stinson's appearance, Judge Nelson would consider recusal mandatory. This was the fourth notice of appearance by Stinson in the consolidated action and the second such appearance in less than four months. Judge Nelson articulated her practice of automatic recusal in an earlier recusal order in the consolidated action, and RFC had already voiced its concern over the practice. Because Impac, Greene Espel and

---

[9] The Court does not intend to require that in all cases, mid-litigation counsel **must** be disqualified if their retention would necessitate a judge's recusal. However, the circumstances of this case present no risk of "unjust hardship" for Impac that would dictate a departure from the principle that courts should police mid-litigation substitution of counsel that would trigger a judge's recusal. *See In re FCC*, 208 F.3d at 140.

Stinson knew hiring Stinson almost two years after consolidation would cause Judge Nelson's recusal, the Court does not believe that disqualifying Stinson would unfairly deprive Impac of its right to counsel. If Impac believes Greene Espel is no longer the correct counsel, there are many excellent law firms who could represent Impac's interests and not cause Judge Nelson to be forced to recuse. Going forward, it is incumbent upon Stinson, Greene Espel, and other counsel in the consolidated action to "take pains" to avoid causing Judge Nelson's recusal. *Id.* at 140.

Impac also asserts that it plans for Stinson to take over as "lead" counsel from Greene Espel on merits issues other than successor liability. In *Glover*, this Court noted that disqualification of counsel did not implicate a party's fundamental right to counsel in part because the additional counsel was added to the case "not [as] lead counsel, but only local courtesy counsel." *Glover*, 2001 WL 228440, at *3. Given that the Eighth Circuit does not consider the right to counsel of one's choosing in the civil context to bear as much constitutional weight as in the criminal context, *see Droste*, 477 F.3d at 1036, this factor alone does not alter the Court's conclusion that Stinson should be disqualified; to hold otherwise would leave the practice of attorney substitution open to tactical abuse.

Fourth, given the strong arguments in favor of Stinson's disqualification, Impac's stated reasons for hiring Stinson simply do not demonstrate that Impac's fundamental rights would be implicated if Stinson is disqualified. Impac argues that it has a sheer need for **more** attorneys to work on the case – because it now appears that the case will, unexpectedly, go to trial and because one attorney from Greene Espel's team is leaving the firm. Impac has its pick of highly-experienced attorneys from local firms, other than Stinson; the increase in workload is not an argument that Impac needs Stinson above all

other firms. Additionally, while Stinson may have attorneys with experience in the issues involved, many other firms do as well. Stinson's expertise, in this instance, is also not an argument that Stinson must stay and Judge Nelson must go.

This case presents unique circumstances: a mid-litigation change of counsel that would once again force a change of judges in part of a much larger set of cases that the Court has consolidated for effective pre-trial management. The Court holds that because Stinson's mid-litigation representation of Impac would trigger Judge Nelson's mandatory recusal, and for all the reasons outlined above, Stinson is prohibited from appearing in the case on Impac's behalf.

### III. MOTION TO ADOPT THE PROCEDURE USED IN THE NORTHERN DISTRICT OF ALABAMA

RFC requests that this Court consider implementing a standard procedure to deal with mid-stream retention of Stinson, or any firm triggering automatic recusal, to apply throughout the consolidated action. RFC points the Court toward a procedure adopted in a Standing Order dated July 12, 1996 in the Northern District of Alabama which would require court approval before such a firm is permitted to appear in the case and would also impose a rebuttable presumption that mid-litigation appearance of such a firm is for the purpose of causing the recusal.

The Court agrees that parties and firms should endeavor to avoid substituting counsel in a manner that might cause mid-litigation recusal, both in the consolidated action before Judge Nelson as well as in all other litigation in this District. While the Court declines to endorse at this time a formal procedure to deal with this type of situation, the Court will refer RFC's proposal to its Federal Practice Committee. In this

District, where there are a multitude of personal and familial connections between bench and bar, the potential for tactical abuse of the mandates of § 455 is all too great. Therefore, it is incumbent upon counsel for all parties in the consolidated litigation that they take seriously their duty to avoid unnecessarily causing Judge Nelson's recusal after she has expended extensive time and effort working on this case on behalf of the District Court.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion Opposing the Recusal of Judge Nelson, or in the Alternative for an Order Prohibiting Impac's Retention of Stinson Leonard Street LLP [Docket No. 1889] is **GRANTED**, as follows:

1. Judge Nelson will not recuse herself in the matter of *Residential Funding Co. v. Impac Funding Corp.*, Civil No. 13-3506, as consolidated in *In re: RFC and ResCap Liquidating Trust Litigation*, Civil No. 13-3451;

2. Defendant Impac Funding Corp. is prohibited from retaining Stinson Leonard Street LLP in the aforementioned matter.

DATED: December 8, 2016  
at Minneapolis, Minnesota.

                                                      s/ John R. Tunheim  
                                                      JOHN R. TUNHEIM  
                                                             Chief Judge  
                                               United States District Court